**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

```
TRACY PARKER                    )    No.   CV 09-8919 CW
                                )
          Plaintiff,            )    DECISION AND ORDER
     v.                         )
                                )
MICHAEL J. ASTRUE,              )
Commissioner, Social            )
Security Administration,        )
                                )
          Defendant.            )
_____)
```

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge. Plaintiff seeks review of the denial of disability benefits. The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

**I.   BACKGROUND**

Plaintiff Tracy Parker was born on November 29, 1962 and was forty-six years old at the time of her administrative hearing. [Administrative Record ("AR") 17.] She has an eleventh grade education and no past relevant work. [Id.] Plaintiff alleges

1

disability on the basis of "[a] pinched vertebrae, shoulder, knee, [and] right leg problems." [AR 16.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on December 3, 2009, and filed on December 11, 2009. On June 15, 2010, Defendant filed an Answer and Plaintiff's administrative record. On August 20, 2010, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for supplemental security income ("SSI") under Title XVI on May 5, 2008, alleging disability since September 5, 1995. [AR 8.] The claim was denied initially on June 19, 2008, and on July 7, 2008, Plaintiff requested an administrative hearing. The hearing was held on June 30, 2009, before Administrative Law Judge David Agatstein. [Id.] Plaintiff was represented by counsel at the hearing. [Id.] Testimony was taken from Plaintiff, medical expert Arthur Brovender, M.D., and vocational expert Sandra Schneider. [Id.] The ALJ denied benefits in a decision filed on September 3, 2009. When the Appeals Council denied review on October 21, 2009, the ALJ's decision became the Commissioner's final decision.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not

2

supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V. DISCUSSION

### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

>Step one: Is the claimant engaging in substantial

```
    gainful activity?  If so, the claimant is found not
    disabled.  If not, proceed to step two.
         Step two: Does the claimant have a "severe" impairment?
    If so, proceed to step three.  If not, then a finding of not
    disabled is appropriate.
         Step three: Does the claimant's impairment or
    combination of impairments meet or equal an impairment
    listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
    so, the claimant is automatically determined disabled.  If
    not, proceed to step four.
         Step four: Is the claimant capable of performing his
    past work?  If so, the claimant is not disabled.  If not,
    proceed to step five.
         Step five: Does the claimant have the residual
    functional capacity to perform any other work?  If so, the
    claimant is not disabled.  If not, the claimant is disabled.
```

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

### B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

Here, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her disability application date (step one); that Plaintiff had the following "severe" impairments: status-post open reduction and internal fixation of a left proximal tibia fracture, and status-post fibular neck fracture (step two); and that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing (step three). [AR 10.] The ALJ determined that Plaintiff's RFC was consistent with a narrowed range of light exertion. Plaintiff is able to sit for six hours out of an eight-hour workday, walk for two hours out of an eight-hour workday, and stand for two hours out of an eight-hour workday. Plaintiff can occasionally climb stairs and ramps, but can never climb scaffolds, and can occasionally bend and squat. Finally, the ALJ noted that Plaintiff "can not perform overhead lifting or fine fingering." [AR 10-11.] Plaintiff has no past relevant work (step four). [AR 12.] The vocational expert testified that a person with Plaintiff's RFC could perform work existing in significant numbers, such as a table worker and order clerk (step five). [Id.] Accordingly, Plaintiff was not found "disabled" as defined by the Social Security Act. [AR 13.]

---

n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

**C.   ISSUES IN DISPUTE**

The parties' Joint Stipulation sets out three disputed issues:

1. Whether the ALJ properly found Plaintiff capable of performing the jobs of table worker and order clerk;
2. Whether the ALJ posed a complete hypothetical question to the vocational expert;
3. Whether the ALJ made proper credibility findings.

[JS 2.]

**D.   ISSUES ONE AND TWO: PLAINTIFF'S RFC LIMITATIONS**

At Plaintiff's oral hearing, the medical expert, Dr. Brovendor, testified that Plaintiff "has no limitation of reaching overhead and no limitation of fine fingering." [AR 24.] The vocational expert, Sandra Schneider, in turn testified that a hypothetical person who "has the limitations described by Dr. Brovendor in his testimony" could perform work at a sedentary level, such as a table worker or order clerk. [AR 25-26.]  As a result, in the administrative decision, the ALJ found that Plaintiff was capable of performing the requirements of occupations such as table worker and order clerk. [AR 12.] However, in the RFC determination, the ALJ indicated that "[t]he [sic] can not perform overhead lifting or fine fingering." [AR 11.]

Plaintiff alleges that the ALJ erred in finding that Plaintiff has the RFC to perform jobs which involve overhead lifting or fine fingering. [JS 3.]  Plaintiff notes that the ALJ's RFC determination indicated that Plaintiff *cannot* perform such tasks.  Plaintiff asserts that, despite the RFC finding, the ALJ held that Plaintiff can work as a table worker and order clerk, jobs which do in fact require overhead lifting and fine fingering. Plaintiff further alleges that in holding that Plaintiff can perform these jobs, the ALJ relied on a job

description which does not comport to Plaintiff's limitations and failed to articulate reasons for deviating from the Dictionary of Occupational Titles (DOT). As a separate issue, Plaintiff also asserts that the ALJ failed to include these limitations when posing a hypothetical to the vocational expert, Sandra Schneider. [JS 6.]

Defendant alleges that the ALJ's finding that Plaintiff was precluded from overhead lifting and fine fingering was a clerical error, and thus was inconsequential to the nondisability determination. [JS 4.] Defendant also asserts that the failure to include the limitation in the hypothetical question posed to the vocational expert was permissible due to the clerical error. [JS 7.] As proof of this, Defendant notes that both the ALJ's finding and Schneider's testimony were based on limitations set forth by the medical expert, Arthur Brovender, that Plaintiff was not limited in performing overhead lifting or fine fingering.

In his decision, the ALJ wrote: "The [sic] can not perform overhead lifting or fine fingering." [AR 11.] Various factors indicate that this was indeed a clerical or typographical error. First, certain grammatical discrepancies within the sentence are suggestive of a clerical error[2]. Moreover, Dr. Brovendor opined that Plaintiff has "no limitation of reaching overhead and no limitation of fine fingering," and the ALJ indicated in the decision that he adopted Dr. Brovender's functional capacity assessment as Plaintiffs' residual functional capacity. [AR 11, 24.] Nothing in the administrative

---

[2] The ALJ failed to include a subject such as Plaintiff or Claimant, and wrote "can not" as two separate words. However, later in the decision, the ALJ used the word "cannot." [AR 12.] While this factor is not dispositive, it does lends itself to the conclusion that the ALJ's statement was the result of a clerical or typographical error.

opinion suggested that the ALJ disagreed with any specific portion of Dr. Brovendor's opinion as to Plaintiff's RFC.

Most significantly, the record does not indicate that Plaintiff was limited in her ability to perform overhead lifting or fine fingering. First, as noted, Dr. Brovender testified, consistent with the record, that Plaintiff had no limitation with regard to either overhead lifting or fine fingering. The ALJ indicated that he adopted Dr. Brovender's opinion in determining Plaintiff's RFC. Additionally, the only evidence supporting such a limitation was testimony by the Plaintiff during the hearing regarding pain and arthritis in her shoulder. However, there is no medical evidence in the record to support Plaintiff's testimony.[3] See Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991)(en banc)("A claimant's subjective complaint of pain is by itself insufficient to establish disability . . . The pain need not be corroborated by objective medical findings, but some impairment must be medically ascertained.")(emphasis in original)(citations omitted). When reconciling Dr. Brovendor's testimony, the medical evidence in the record, and all other testimony, the record as a whole does not support a finding of a limitation of overhead lifting or fine fingering. Thus, the ALJ's RFC determination does not call into question the nondisability determination.

Also without merit is Plaintiff's claim that the hypothetical

---

[3] Plaintiff applied for disability benefits after she fractured her left knee during a fall from her bicycle. [AR 11.] The treating medical records do not indicate that Plaintiff had any shoulder impairment or treatment that would support the limitations at issue, nor does Plaintiff cite any such evidence. [See AR 127-36, 143, 146, 147-203.] Moreover, a state agency physician concluded, based on review of the record, that Plaintiff had no manipulative limitations in fingering, handling, or reaching in all directions. [AR 139.]

posed to the vocational expert was incomplete. The hypothetical was based on a person who "has the limitations described by Dr. Brovendor in his testimony." [AR 25-26.] Plaintiff correctly notes that these limitations do not include overhead lifting and fine fingering. However, An ALJ is not required to include limitations for which there was no evidence. See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (ALJ not bound to accept as true the restrictions set forth in hypothetical if they were not supported by substantial evidence). As discussed above, there was no evidence in the record as a whole to support a finding for such a limitation, and so the ALJ was not required to include the limitation in the hypothetical. The ALJ posed a complete hypothetical to the vocational expert, and his finding that Plaintiff can perform work as a table worker or order clerk was proper. Accordingly, Plaintiff's claims are without merit.

**E. ISSUE THREE: PLAINTIFF'S CREDIBILITY**

Plaintiff fractured her left knee during a fall from a bicycle and underwent surgery on April 1, 2008. [AR 18, 21]. She was discharged on April 8, 2008. [AR 184.] During this period, she was kept in the hospital for observation and physical therapy. However, the Plaintiff eventually refused physical therapy, claiming that she did not need it. [AR 169-70, 185.] Plaintiff was also scheduled for follow-up physical therapy, but failed to attend it because she "had to move and stuff," and it was difficult for her to get around. [AR 19-20, 29.] Plaintiff testified that now her leg never stops hurting, and the pain level is at "nine" on a scale of ten. [AR 21-22.] She uses a power scooter to get around, and sometimes walks with a cane, although she attended her hearing without the assistance of either. [AR 20.]

1    In the administrative decision, the ALJ initially noted that he
2 did "not doubt that for a period of weeks, or perhaps months, after
3 the claimant's release from hospitalization that her functional
4 capacity was at a less than sedentary level of exertion." [AR 11.]
5 However, the ALJ also found that the record indicated that "her
6 recovery proceeded without complication, and that in less than twelve
7 months after the date of her accident the claimant was able to perform
8 work within the residual functional capacity assigned herein." [Id.]

9    The ALJ further noted that Plaintiff "failed to seek and undergo
10 continuing follow-up medical treatment . . . indicat[ing] that her
11 complaints of limitation and pain are incredible: surely if she
12 experienced a significant level of pain and functional limitation she
13 would seek out follow-up treatment." [AR 12.]  Finally, the ALJ noted
14 the availability of "low or no cost" treatment sources in Plaintiff's
15 area of residence.

16    Plaintiff alleges that the ALJ did not provide clear and
17 convincing reasons for undermining her pain testimony and for finding
18 that Plaintiff's subjective symptoms were note credible. [JS 9.]
19 Defendant contends that the ALJ provided substantial supporting
20 evidence, such as various evidence indicating that Plaintiff failed to
21 seek and undergo continuing follow-up medical treatment. [JS 10.]

22    "Our case law is clear that if a claimant complains about
23 disabling pain but fails to seek treatment, or fails to follow
24 prescribed treatment for the pain, an ALJ may use such failure as a
25 basis for finding the complaint unjustified or exaggerated." Orn v.
26 Astrue, 495 F.3d 625, 638 (9th Cir. 2007); see 20 CFR § 404.1530(a)
27 and 416.930(a) ("In order to get benefits, you must follow treatment
28 prescribed by your physician if this treatment can restore your

ability to work."); 20 CFR § 404.1530(b) and 416.903(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled").  The ALJ's reasons for discounting Plaintiff's testimony are supported by substantial evidence in the record. Plaintiff testified that she was unable to attend physical therapy because she had to change residences; however, her ability to move in and of itself was indicative of some ability to get around and ambulate.  Additionally, Plaintiff testified that she got around with the assistance of a power scooter or cane, yet she attended her hearing without the assistance of either, indicating that it was possible for her to ambulate when necessary.  Plaintiff refused to participate in physical therapy immediately after knee surgery, and failed to seek follow-up therapy.  The ALJ noted that the record contained "no indication of follow-up treatment after April 16, 2008," eight days after Plaintiff's surgery. [AR 11.]  Although Plaintiff testified that her pain level was very high, her ability to ambulate when necessary, and subsequent failure to seek relief from her pain were probative of her lack of credibility.  Moreover, the ALJ's RFC determination took into account a significant degree of limitation in Plaintiff's ability to walk or stand.  Accordingly, Plaintiff's claim is without merit.

//
//
//
//
//
//
//

**V. ORDERS**

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.

2. This action is **DISMISSED WITH PREJUDICE**.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: October 26, 2010

_____
CARLA M. WOEHRLE
United States Magistrate Judge